UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| KEVIN PENELTON,<br><br>Plaintiff,<br><br>v.<br><br>CENTURION HEALTH SERVICES,<br>SAMUEL BYRD,<br>CASEY JACOBS-CAMPELL,<br>BARBARA RIGGS,<br>M. WILLIS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:25-cv-00434-JPH-MG |

**ORDER DENYING DEFENDANT CENTURION HEALTH SERVICE'S MOTION TO DISMISS**

Plaintiff Kevin Penelton is proceeding on Eighth Amendment deliberate indifference claims against several defendants, including Centurion Health Services. Centurion filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Motion to Dismiss, dkt. [35], is **DENIED**.

## I. Factual Allegations and Procedural Background

Mr. Penelton filed this lawsuit pro se on September 9, 2025, while he was incarcerated at Wabash Valley Correctional Facility. Dkt. 2. He alleges that Centurion was deliberately indifferent to his serious medical needs when it refused to approve surgery to repair ruptured tendons in Mr. Penelton's right arm and failed to approve pain management injections to his right shoulder. *Id.* at 3.

Mr. Penelton alleges that in 2023, Wellpath, the medical provider for the jail where Mr. Penelton was initially incarcerated, refused to approve a scheduled surgery for his bicep and shoulder injury. *Id.* at 4. After being transferred to Wabash Valley, Centurion approved an MRI that revealed significant damage to the right shoulder joint and bicep. *Id.* at 4–5. Centurion then approved a consultation with an offsite orthopedist, who informed him that he would not perform the surgery. *Id.* at 5. After this appointment, the onsite medical providers at Wabash Valley submitted offsite requests to Centurion, but Mr. Penelton did not receive any follow-up care until November 8, 2023, when he saw another orthopedist. *Id.* Onsite providers at Wabash Valley prescribed pain medication, RICE, and physical therapy, but Mr. Penelton's pain remained unbearable. *Id.*

Beginning in May 2024, Mr. Penelton began requesting cortisone injections to manage the unbearable pain in his shoulder. *Id.* at 6. On June 17, 2024, Nurse Practitioner Casey Jacobs-Campell informed Mr. Penelton that Centurion would not pay for corrective surgery. *Id.* Centurion also continued to "string [Mr. Penelton] along" throughout 2024 and 2025, by delaying approval and scheduling for cortisone injections. *Id.* at 7–8. Centurion also failed to approve and schedule a follow-up MRI. *Id.* at 8. As of the date of filing the complaint in September 2025, Mr. Penelton had not received meaningful pain management and now has permanent damage to his right arm. *Id.* at 9.

The Court's screening order allowed Mr. Penelton to proceed on Eighth Amendment claims against Centurion under the theory of liability recognized in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Dkt. 13 at 6; *See Dean v.*

*Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (explaining that private companies that provide essential services to prisoners are treated as municipalities for the purposes of 42 U.S.C. § 1983 and can be sued when their actions violate the constitution). Centurion filed a motion to dismiss. Dkt. 35.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) only requires a "short and plain statement" to show that a pleader is entitled to relief. "A complaint need only state the nature of the claim; details can wait for later stages." *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 919 (7th Cir. 2002). Thus, a plaintiff's complaint "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . Specific facts are not necessary[.]". *Childress v. Walker*, 787 F.3d 433, 440–41 (7th Cir. 2015).

To survive a Rule 12(b)(6) motion, the complaint must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court takes "as true all well-pleaded factual allegations and [makes] all possible inferences from the allegations in the plaintiff's favor." *Roe v. Dettelbach*, 59 F.4th 255, 261–62 (7th Cir. 2023). The Court construes pro se complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## III. Discussion

To plausibly plead his Eighth Amendment *Monell* claim against Centurion, Mr. Penelton must allege that he was deprived of a federal right, *Dean*, 18 F.4th at 235, and that Centurion's actions deprived him of that right, *Calhoun v.*

*Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Centurion cannot be held liable under a theory of *respondeat superior*. *Id.* Three types of actions "can support municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

At the pleading stage, Mr. Penelton does not need to specify a legal theory supporting his *Monell* claim. The Seventh Circuit has "'stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery.'" *Zemlick v. Burkhart*, 164 F.4th 1004, 1016 n.3 (7th Cir. 2026) (quoting *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)).

Centurion argues that Mr. Penelton fails to state a claim because (1) the complaint alleges that Centurion is vicariously liable for the individual Defendants' actions and (2) the complaint does not show that Centurion's actions caused Mr. Penelton's injury. Dkt. 36 at 5. Mr. Penelton responds that he sufficiently alleged causation by showing that Centurion "had a direct hand" in denying and delaying surgery and injections for pain management. Dkt. 44 at 2–3.[1]

---

[1] Centurion's reply points out that most of Mr. Penelton's response improperly references materials and facts that do not appear in the complaint. Dkt. 46. The Court does not consider anything outside the complaint when ruling on Centurion's 12(b)(6) motion. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the

### A. The complaint does not allege respondeat superior liability against Centurion

Centurion's first argument—that Mr. Penelton's claim against it relies on a theory of respondeat superior—misrepresents the complaint. Dkt. 36 at 4–5. The complaint repeatedly alleges that *Centurion* denied and delayed approving the individual medical provider's requests for offsite surgery, injections, and an MRI. It also alleges that one of the individual medical providers told Mr. Penelton that *Centurion* would not pay for surgery. These allegations are about Centurion itself, not that Centurion is vicariously liable because it employs the individual medical providers. The allegations support a theory that Centurion's conduct violated Mr. Penelton's rights because its decisions delayed treatment for his injury.

### B. The complaint sufficiently alleges causation

Centurion next argues that Mr. Penelton has not pleaded "that Centurion was the moving force behind the alleged constitutional violation." Dkt. 36 at 6. The complaint alleges that Centurion denied surgery due to cost-cutting, that it continuously denied and delayed offsite requests for pain management injections, and that it denied a follow-up MRI. Mr. Penelton also alleged that he had not received meaningful pain management treatment, causing permanent damage and permanent pain and suffering. Though Mr. Penelton does not need to specify a legal theory at this stage, his complaint alleges facts plausibly supporting a practice of inaction in approving and scheduling offsite medical

---

complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.").

procedures. *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381–82 (7th Cir. 2017) (explaining that a policy of inaction can form the basis of *Monell* liability); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) (explaining that a system of diffusing individual responsibility and accountability for healthcare can form the basis of *Monell* liability).

Centurion argues that Mr. Penelton cannot rely on his own isolated experiences and his complaint fails because he does not identify a pattern of refusals for similarly-situated inmates. Dkt. 36 at 7. But "federal courts may not apply a heightened pleading standard . . . in civil rights cases alleging municipal liability." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). Under that standard, Mr. Penelton is "not required to identify every other or even one other individual" affected by Centurion. *Id.* Although plaintiffs commonly plead *Monell* claims by alleging a widespread practice affecting other individuals, "'[t]here is no magic number of injuries that must occur before [a defendant's] failure to act can be considered deliberately indifferent[.]'" *Thomas v. Chmell*, 569 F. Supp. 3d 732, 739 (N.D. Ill. 2021) (quoting *Glisson*, 849 F.3d at 382).[2] For example, in *Thomas* the district court denied the defendants' motion to dismiss *Monell* claims even though the plaintiff only alleged facts concerning his personal experience because "repeated deliberate indifference toward the plaintiff" may be adequate

---

[2] The *Howell* court pointed out that "[d]espite the absence of bright-line rules, there can be little doubt that a practice or custom theory will be more persuasive if a plaintiff can show that the defendant government or company treated other, similarly situated patients in similar unconstitutional ways." *Howell*, 987 F.3d at 655. Nevertheless, a motion to dismiss does not test the persuasiveness of the plaintiff's claims.

to support a *Monell* claim. *Id.* (citing *Howell*, 987 F.3d at 655); *see also Howell*, 987 F.3d at 655 n.1 (collecting cases).

In this case, Mr. Penelton's complaint alleges that Centurion continuously denied and delayed off-site treatment over multiple years and for multiple procedures. At the pleading stage, Mr. Penelton's allegations suffice to plausibly plead that these delays and denials were "a true municipal or corporate policy at issue and not just a random event." *Howell*, 987 F.3d at 654 (citing *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008)). The complaint also contains facts plausibly supporting an allegation that the constitutional injury was caused by a high-ranking official with policy-making authority (i.e., the person charged with approving and scheduling offsite medical procedures). Indeed, the complaint repeatedly alleges that *Centurion* caused the denials and delays by failing to approve offsite requests.

In sum, Mr. Penelton's complaint adequately states a *Monell* claim against Centurion.

## IV. Conclusion

Centurion's motion to dismiss, dkt. [35], is **DENIED**. Centurion shall file a responsive pleading within 14 days of this order. Fed. R. Civ. P. 12(a)(4).

**SO ORDERED.**

Date: 10/6/2026

James Patrick Hanlon

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

KEVIN PENELTON
946100
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All electronically registered counsel